NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK S. NORTON,<br><br>    Plaintiff,<br><br>v.<br><br>PRAXAIR DISTRIBUTION, INC. and<br>CHRISTINE THATCHER,<br><br>    Defendants. | Civ. No. 17-6897<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court on the Motion for Summary Judgment brought by Defendants Praxair Distribution, Inc. ("Praxair") and Christine Thatcher (collectively, "Defendants"). (ECF No. 24.) Plaintiff has not opposed the Motion. The Court has decided the Motion after considering the written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, the Court grants Defendants' Motion for Summary Judgment.

## **BACKGROUND**

This employment action arises from alleged age discrimination, retaliation, and aiding and abetting age discrimination and retaliation, all in violation of the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. § 10:5-1 *et seq.* (Compl. ¶ 1, ECF No. 1.) Defendant Praxair sells and distributes highly pressurized industrial gases such as oxygen and nitrogen. (Defs.' Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 24-2.) GTS-Welco, a subsidiary of Defendant Praxair, hired Plaintiff Mark S. Norton ("Plaintiff") on November 12,

1

2009; Defendant Thatcher approved his hiring. (*Id.* ¶¶ 4, 7.) Defendant Praxair subsequently acquired GTS-Welco, and Plaintiff became an employee of Defendant Praxair in September 2014 when Plaintiff was fifty-seven years old. (*Id.* ¶¶ 5–6.) During the entirety of his employment, Plaintiff served as a distribution supervisor, coordinating deliveries and supervising delivery drivers. (*Id.* ¶¶ 7–8.)

I. **Plaintiff's Performance and Facts Relating to his Failure-to-Promote Claim**

Plaintiff alleges that Defendant Praxair twice refused to promote him and instead hired substantially younger candidates over him. (Compl. ¶¶ 86–96.) Plaintiff contends that he applied for the open "distribution manager" position by advising his supervisor that he was interested in the job, but Defendant Praxair contends that it "has no record of Plaintiff ever formally applying for the position." (Defs.' SUMF ¶¶ 24–26.) Defendant Praxair selected Paul Giocomini over Plaintiff in 2011 and Brett Khan over Plaintiff in July 2015 (*id.* ¶¶ 29–36); Plaintiff testified that "[he] thought he was more qualified" but "could not . . . recall" any evidence that the decision to hire someone else over him was based on age (Norton Dep. 241:19–23, Ex. 1, ECF No. 24-3).

In June 2015, Frank Wojtaszek, the facility manager and Plaintiff's supervisor at the time, identified numerous deficiencies in Plaintiff's performance[1] and decided to present him with "Performance Improvement Election/Performance Improvement Notification" whereby, in accordance with Defendant Praxair's practice, Plaintiff elected to participate in "performance

---

[1] Specifically, Mr. Wojtaszek noted (a) Plaintiff's communication with and responsiveness to sales, customer service, and other operations personnel; (b) Plaintiff's accountability for and performance for his areas of responsibilities, including vehicle maintenance, truck routing and scheduling, shift hand-off procedures, and use of Defendant Praxair's personnel management system; (c) favoritism and other inconsistencies in managing drivers' assignments and schedules; and (d) the unauthorized change of his work hours. (Defs.' SUMF ¶ 40.)

2

improvement monitoring" rather than severance. (Defs.' SUMF ¶¶ 4, 37–42.) During the proceeding months, Mr. Wojtaszek regularly met with Plaintiff to discuss his performance, and Defendant Thatcher "participated in some of the [performance improvement monitoring] meetings at Plaintiff's request." (*Id.* ¶¶ 44–46.) Plaintiff testified that he does not believe that the performance improvement monitoring was based upon his age, that none of the individuals involved in the performance improvement monitoring meetings ever made inappropriate comments about his age, and that he never complained to anyone that he felt the performance improvement monitoring was administered due to his age. (*Id.* ¶¶ 48–50; Norton Dep. 149:3–8.)

In the Fall of 2015, an anonymous individual submitted a complaint via Defendant Praxair's "hotline" that "at the instruction" of Mr. Wojtaszek, Plaintiff had falsified timesheets and hours of service records to cover up various Department of Transportation violations. (Defs.' SUMF ¶¶ 51, 53; *see also* Ex. 16, ECF No. 24-3 (providing summary of incident report).) As a company that transports flammable and combustible gases, Defendant Praxair and its drivers are highly regulated by the Department of Transportation. (Defs.' SUMF ¶ 15.) For example, Defendant Praxair's drivers are not permitted to be on duty for more than sixty hours in one week or more than fourteen hours consecutively (the "Hours Requirement"). (*Id.* ¶ 16.) As a distribution supervisor, Plaintiff was responsible for ensuring that the drivers complied with the Hours Requirement by monitoring their hours maintained in the timekeeping system and checking that system before assigning a delivery to a driver. (*Id.* ¶¶ 18–23.) The anonymous complaint spurred an internal investigation, which revealed that Plaintiff had in fact falsified the time on a driver's report and in the timekeeping system that would have caused the driver to exceed the Hours Requirement (*id.* ¶¶ 64–66 (detailing conduct)); Plaintiff testified that he indeed falsified the timekeeping, but that he did so through the direction of his supervisor, Mr.

Wojtaszek (Norton Dep. 199:23–201:4). As a result of the investigation, Defendant Praxair terminated Mr. Wojtaszek and issued Plaintiff a written reprimand and warned him that future violations could result in termination. (Defs.' SUMF ¶¶ 67–71; *see also* Ex. 22, ECF No. 24-3 (written reprimand).)

## II.  Facts Relating to Plaintiff's Retaliation Claim

On November 6, 2015, Defendant Praxair received two other anonymous complaints submitted via its hotline. (Defs.' SUMF ¶ 51.) Two employees separately complained that Mr. Khan, Plaintiff's supervisor at the time, "made inappropriate comments of a sexually/racially insensitive nature." (*Id.* ¶ 52.) Plaintiff admits that he did not author either of these comments. (Norton Dep. 180:4–182:2.) Plaintiff instead contends that he submitted a third complaint via the hotline in November 2015 (*id.* 172:15–173:11); Defendant Praxair, however, claims that it has no record of this third complaint (Defs.' SUMF ¶ 54). Rather, Defendant Praxair believes that Plaintiff was merely one of several employees interviewed in connection with Defendant Praxair's internal investigation of Mr. Khan. (*Id.*)

Defendant Praxair investigated the complaints against Mr. Khan on November 16–18, 2015. (*Id.* ¶ 55.) Defendant Praxair ultimately suspended Mr. Khan for five days, issued him a written reprimand, and required him to attend workplace harassment training. (*Id.* ¶ 58.) Defendant Praxair did not receive another complaint about Mr. Khan (*id.* ¶ 59), and although Plaintiff felt uncomfortable because Mr. Khan remained Plaintiff's supervisor, Plaintiff testified that he did not have any further issues with Mr. Khan (Norton Dep. 183:13–184:9, 236:2–5). Defendant Thatcher, who was not involved in the investigation of Mr. Khan, testified that she was not aware that Plaintiff had made a complaint against Mr. Khan. (Thatcher Dep. 133:25–134:12, 180:10–182:4, 188:24–189:18, Ex. 2, ECF No. 24-3.)

**III.    Events Surrounding Plaintiff's Termination**

On December 19, 2015, Plaintiff was "on call" as the weekend distribution supervisor, responsible for dispatching drivers for emergency deliveries over the weekend. (Defs.' SUMF ¶ 72.) After being notified of the need for an emergency delivery, Plaintiff contacted numerous drivers to determine whether anyone was available to make the delivery. (*Id.* ¶ 76.) Plaintiff ultimately sent Juan Rivera to make the delivery.

The parties dispute whether Plaintiff knew—and thus disregarded—the fact that Mr. Rivera was close to exceeding the Hours Requirement before this delivery. Defendants contend that Plaintiff knew at the time that Mr. Rivera was close to exceeding the Hours Requirement but sent Mr. Rivera to make the delivery notwithstanding. (*Id.* ¶¶ 76–83.) In support, Defendants offer two statements made in the course of the internal investigation: Mr. Rivera stated that he specifically told Plaintiff at the time that he did not have enough hours to make the delivery (*id.* ¶ 81; *see also* Ex. 25, ECF No. 24-3 (statements of Juan Rivera)), and Plaintiff himself stated that "[he] was aware [at] the time that Juan Rivera was very close or if not just over his [Hours Requirement]" (Ex. 24, ECF No. 24-3 (statements of Plaintiff); *see also* Defs.' SUMF ¶ 86; Norton Dep. 231:23–232:19, 234:13–235:3).

"Based on Plaintiff's admissions and in light of his recent reprimand . . . for an almost identical violation," Defendant Thatcher, on behalf of Defendant Praxair, terminated Plaintiff's employment on January 1, 2016. (Defs.' SUMF ¶¶ 88–89.) A few days after his termination, Plaintiff discovered that Mr. Rivera did not actually exceed the Hours Requirement on the day of the incident and, as a result, attempted to retract his statement made during the internal investigation; however, Defendant Praxair maintained its decision to terminate Plaintiff's

employment because he had not checked the timekeeping system at the time to know for certain whether the driver had sufficient hours to make the delivery. (*Id.* ¶ 90.)

**IV.     Procedural History**

On July 28, 2017, Plaintiff filed this action in Superior Court of New Jersey, Law Division, Monmouth County, and Defendant removed to this Court on September 8, 2017. (Not. Rmv'l ¶ 1.) Plaintiff pleads five counts, all pursuant to the NJLAD: (1) Defendant Praxair unlawfully terminated Plaintiff because of his age (Compl. ¶¶ 75–85); (2) Defendant Praxair unlawfully failed to promote Plaintiff because of his age (*id.* ¶¶ 86–96); (3) Defendant Praxair unlawfully retaliated against Plaintiff (*id.* ¶¶ 97–104); (4) Defendant Thatcher aided and abetted age discrimination (*id.* ¶¶ 105–13); and (5) Defendant Thatcher aided and abetted unlawful retaliation (*id.* ¶¶ 114–22).

Defendants filed their Answer on December 1, 2017 (ECF No. 11) and thereafter participated in discovery (*see* ECF Nos. 14, 19, 21). On January 10, 2019, the Court ordered that dispositive motions shall be filed by January 31, 2019. (4th Am. Scheduling Order at 1, ECF No. 23.) The Court also indicated that any opposition to such a motion shall be filed by February 8, 2019. (*See id.* (setting returnable date for February 22, 2019).)

On January 31, 2019, Defendants filed the instant Motion for Summary Judgment. On February 8, 2019, the day that his opposition papers were due, Plaintiff requested an extension of time (ECF No. 25); the Court extended his deadline to February 22, 2019 (ECF No. 26). On February 21, 2019, Plaintiff again requested an extension of time (ECF No. 27), which the Court granted, extending his deadline to March 15, 2019 (ECF No. 28). On March 20, 2019, five days after his opposition papers were due, Plaintiff requested another extension to March 25, 2019 (ECF No. 29), which Defendants opposed (ECF No. 30). Plaintiff failed to file his opposition

papers on March 25, but on April 3, 2019, the Court extended Plaintiff's deadline to April 5, 2019. (ECF No. 32.) It noted, however, that "[n]o submissions will be accepted after that date." (*Id.*) On April 8, 2019, Defendants requested that this Court deem as unopposed Defendants' Motion for Summary Judgment (ECF No. 33), which the Court granted (ECF No. 34). Defendants' Motion for Summary Judgment is currently before the Court.

## LEGAL STANDARD

**I.      Summary Judgment**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant

summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. Framework for Discrimination and Retaliation Claims under the NJLAD

When examining a discrimination or retaliation claim under the NJLAD, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) ("The Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD as the New Jersey statute borrows the federal standard set forth in *McDonnell Douglas*."); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002) (adopting the *McDonnell Douglas* framework for NJLAD employment discrimination cases). "Under this framework, the plaintiff has the burden of establishing a *prima facie* case of discrimination, with the particular requirements differing based on the form of discrimination alleged." *Desantis v. N.J. Transit*, 2019 U.S. App. LEXIS 3117, at *9 (3d Cir. Jan. 25, 2019) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426–27 (3d Cir. 2013)).

If the plaintiff succeeds in establishing a *prima facie* claim of discrimination, "the burden shifts to the defendant to provide evidence of a legitimate, non-discriminatory [or non-retaliatory] reason for the adverse employment decision." *Desantis*, 2019 U.S. App. LEXIS 3117, at *9 (citing *McDonnell Douglas*, 411 U.S. at 802). "Once the defendant meets that burden, the plaintiff [then] must demonstrate that the defendant's proffered reason was a pretext for discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804; *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015)).

> In the context of a challenge to a grant of summary judgment, at the pretext stage of *McDonnell Douglas* the [plaintiff] "must point to some evidence, direct or

circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." To accomplish this, the [plaintiff] must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons."

*Tourtellotte*, 636 F. App'x at 842 (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

## DISCUSSION

### I. Discrimination Claims

The NJLAD makes it unlawful "[f]or an employer, because of the . . . age . . . of any individual . . . to refuse to hire or employ . . . or to discharge . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. § 10:5-12(a). Plaintiff brings two claims under this provision: (A) Defendant Praxair terminated him based on his age, and (B) Defendant Praxair failed to promote him based on his age.

#### A. *Termination (Count I)*

"[T]o establish a *prima facie* case of discrimination, the [plaintiff] must show that '(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.'" *Lapaz v. Barnabas Health Sys.*, 634 F. App'x 367, 369 (3d Cir. 2015) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

Defendant Praxair disputes only the fourth element—"the action occurred under circumstances that could give rise to an inference of intentional discrimination"—and contends that Plaintiff cannot establish a *prima facie* claim of discrimination. (*See* Defs.' Br. at 6–7.)

9

Defendant Praxair submits that Plaintiff "was never subjected to even a single comment or any conduct that he felt was inappropriate based on his age" and points to Plaintiff's testimony as an admission to such. (*Id.* at 6; Norton Dep. 235:25–236:15.) Furthermore, Defendant Praxair points out that of its 117 employees, 41 of them are over the age of fifty. (Baldwin Decl. ¶ 28, ECF No. 24-4.)

Regardless of whether the evidence suggests that Plaintiff established a *prima facie* claim, Defendant Praxair carries their burden in offering a legitimate, nondiscriminatory reason for terminating Plaintiff's employment: "Plaintiff was terminated for sending a driver out to make an emergency weekend delivery knowing that the driver was about to or had already exceeded the maximum number of driving hours permitted by the DOT regulations" (*i.e.*, the Hours Requirement). (Defs.' Br. at 7.) Although it was ultimately discovered that the driver did not exceed the Hours Requirement (Defs.' SUMF ¶ 90), the evidence suggests that Plaintiff knew or should have known that the driver was close to exceeding the Hours Requirement before Plaintiff sent him to effect the delivery but nonetheless ignored that risk (*see* Ex. 25 (driver's statement that he had exceeded his hours); Defs.' SUMF ¶ 85 (noting that Plaintiff informed Defendant Praxair the very next day that "they might have a problem")). Indeed, Plaintiff even admitted that "[he] was aware [at] the time that Juan Rivera was very close or if not just over his [Hours Requirement]." (Ex. 24; *see also* Defs.' SUMF ¶ 86.) Plaintiff understood the severity of complying with the Hours Requirement as, just a few months prior, Defendant Praxair terminated Plaintiff's supervisor and issued Plaintiff a written reprimand and warning for a similar infraction. (Defs.' SUMF ¶¶ 67–71.)

Defendant Praxair's "burden at this stage is relatively light [and] is satisfied if [it] articulates any legitimate reason for the [adverse employment action]." *Carlson v. Twp. of*

*Lower Alloways Creek*, 452 F. App'x 95, 99 (3d Cir. 2011) (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)). Although reasonable minds may differ on whether Plaintiff's conduct constituted a terminable offense, Defendants "were free to exercise their business judgment and terminate Plaintiff as long as it was not a discriminatory animus that motivated the decision." *Geng v. PNC Fin. Servs. Grp.*, 2014 U.S. Dist. LEXIS 104574, at *31 (D.N.J. July 31, 2014) (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)); *see also Tokash v. Foxco Ins. Mgmt. Servs.*, 548 F. App'x 797, 803 (3d Cir. 2013) (explaining that the fact-finder need only determine "whether it was business judgment rather than invidious discrimination that motivated [defendant] to terminate [plaintiff's] employment").

At this point, the burden shifts to the plaintiff to "demonstrate that the defendant's proffered reason was a pretext for discrimination." *Desantis*, 2019 U.S. App. LEXIS 3117, at *9 (citing *McDonnell Douglas*, 411 U.S. at 804). "[P]roving pretext 'places a difficult burden on the plaintiff,'" *Carlson*, 452 F. App'x at 100 (quoting *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)), but Plaintiff fails to oppose the Motion and thus offers no hint of pretext. Moreover, Plaintiff testified that none of the employees involved in Plaintiff's termination ever made comments to Plaintiff based on his age:

> Q. Let me streamline this. Was there ever anyone at Praxair that made to you any comments or statements to you that you felt were inappropriate age based comments?
> A. Not that I recall, but I cannot say that they didn't. I just don't recall any.

(Norton Dep. 236:2–15, 247:12–249:8.) The evidence presented simply does not support a sufficient inference that Plaintiff's age was a motivating factor in the decision to terminate his employment. Because the Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case,"

11

*Celotex*, 477 U.S. at 322, the Court grants summary judgment in favor of Defendant Praxair in regard to Count I.

      B.    *Failure to Promote (Count II)*

In a failure-to-promote case, the plaintiff must establish as part of his *prima facie* claim that "(1) [he] belongs to a protected class, (2) [he] applied for and was qualified for a position for which the employer was seeking applicants, (3) [he] was denied promotion, and (4) others with similar or lesser qualifications achieved promotion." *Coefield v. GPU*, 125 F. App'x 445, 449 (3d Cir. 2005) (citing *Dixon v. Rutgers*, 541 A.2d 1046, 1051–52 (N.J. 1988)).

Defendant Praxair challenges the second and fourth elements of Plaintiff's *prima facie* claim. (*See* Defs.' Br. at 16–19.) As to the second element, however, the parties dispute whether Plaintiff ever actually applied for the promotional position in July 2015.[2] (*Compare* Norton Dep. 81:9–83:22, 86:7–12 (testifying about his application and interview), *with* Defs.' SUMF ¶ 25–26 (contending that Plaintiff never formally applied for the promotional position), *and* Baldwin Decl. ¶¶ 10–12 (same).) This genuine dispute of material fact precludes summary judgment on this basis.

As to the fourth element, Defendant Praxair contends that Plaintiff was not as qualified as the selected candidate, Mr. Khan, in July 2015. (Defs.' Br. at 18–19.) As part of his *prima facie* case, Plaintiff must show that Defendant Praxair hired or promoted "similarly situated" candidates—*i.e.*, "persons possessing equivalent qualifications" such as "educational level, job

---

[2] Plaintiff also challenges Defendant Praxair's failure to promote him sometime in 2011. However, the Supreme Court of New Jersey has established a two-year statute of limitations for claims pursuant to the NJLAD. *See Henry v. N.J. Dep't of Human Servs.*, 9 A.3d 882, 889 (2010) (citing *Montells v. Haynes*, 627 A.2d 654, 659–60 (N.J. 1993)). Because Plaintiff filed this case on July 28, 2017 (Not. Rmv'l ¶ 1), the statute-of-limitations period for his 2011 claim clearly has run. Therefore, the Court will consider only Plaintiff's failure-to-promote claim that transpired in July 2015.

12

experience and, most importantly, the quality of work performed"—over Plaintiff. *Peper v. Princeton Univ. Bd. of Trs.*, 389 A.2d 465, 480 (N.J. 1978).

Defendant Praxair contends that it was "looking for candidates with managerial experience, preferably from a larger organization that was similar in size and scope to [Defendant] Praxair, as well as fleet management experience managing a large distribution work force and who had direct oversight of regionally-focused distribution operations." (Baldwin Decl. ¶ 13.) It also desired an external candidate who would add a "new perspective and skill set to an underperforming facility." (*Id.*)

The evidence presented suggests that the Plaintiff was not "similarly situated" as compared to Mr. Khan. Defendant Praxair submits that Plaintiff had no managerial experience and, although he managed on-shift issues with drivers, he had no direct reports and no responsibility for or experience in managing performance or disciplining employees. (*Id.* ¶¶ 17–18.) In comparison, Mr. Khan "worked as a General Manager for United Parcel Service for more than five years. . . . [and] had a Certification in the Six Sigma methodology for project management, which would enable him to bring the desired skill set to managing distribution at [Plaintiff's] facility." (*Id.* ¶ 14; *see also* Norton Dep. 96:16–20, 101:4–25, 108:11–110:19 (outlining the differences between Plaintiff's position and the position for which he applied).)

Plaintiff testified that "[he] thought he was more qualified" (Norton Dep. 241:19–23), but "[P]laintiff's own subjective opinion that he was qualified for a given position is immaterial" and the Court "must view [P]laintiff's 'qualifications' based on objective criteria." *Shah v. N.J. Office of Homeland Sec. & Preparedness*, 2018 U.S. Dist. LEXIS 52508, at *23 (D.N.J. Mar. 29, 2018) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 320 (3d Cir. 2000)). Indeed, Plaintiff testified that he was not even aware of Mr. Khan's qualifications. (*See* Norton

Dep. 86:7–88:1, 92:14–94:11; *cf. Oare v. Midlantic Nat'l Bank/Merchants*, 1990 U.S. Dist. LEXIS 689, at *10-11 (D.N.J. Jan. 16, 1990) (holding that plaintiff's "claim cannot survive with regard to the promotion denials" because "[p]laintiff ha[d] not submitted any evidence of who eventually was hired for the program, how their qualifications compared to his, or whether they were hired after his rejection").

Alternatively, Defendant Praxair offers legitimate, nondiscriminatory reasons for its decision not to promote Plaintiff—namely, Plaintiff lacked the skills required for the promotional position and Defendant Praxair wanted to hire an external candidate because Plaintiff's entire facility was underperforming—that overlap with Plaintiff's *prima facie* case. (*See* Defs.' Br. at 20–21; *see also DeSantis v. N.J. Transit*, 2017 U.S. Dist. LEXIS 182741, at *14 (D.N.J. Nov. 2, 2017) ("When an employer selects a candidate with greater qualifications, it demonstrates a legitimate, non-discriminatory motive for its action." (citing *Taylor v. Cherry Hill Bd. of Educ.*, 85 F. App'x 836, 839–41 (3d Cir. 2004))).) Although managerial skills and a candidate's external status may not be universally desirous attributes, "[e]ven if [Defendant Praxair] is wrong about the importance of the [these attributes], [it] has the prerogative to exercise its business judgment and reach an erroneous conclusion, as long as the evaluative criterion is not a pretext for unlawful discrimination." *Illingworth v. Nestle U.S.A.*, 926 F. Supp. 482, 485 n.1 (D.N.J. 1996).

Again, at this point, the burden shifts to Plaintiff to demonstrate that Defendant Praxair's proffered reason was a pretext for discrimination, but Plaintiff fails to oppose the Motion for Summary Judgment. Two pieces of evidence, however, suggest that Defendant Praxair's proffered reason was not a pretext for discrimination: (1) the decision-maker who failed to promote Plaintiff was actually around the same age as Plaintiff (Baldwin Decl. ¶ 8); and (2)

14

Plaintiff's supervisor identified numerous deficiencies in Plaintiff's performance and placed him on performance improvement monitoring in June 2015, a month before Plaintiff allegedly applied for the promotional position (Defs.' SUMF ¶ 40). The evidence presented does not support any inference that Defendant Praxair based its hiring decision on impermissible, discriminatory factors—to which Plaintiff himself admits. (*See* Norton Dep. 241:7–23 (testifying that he had no evidence that the decision-maker's decision to hire someone else over him was based upon his age).) Accordingly, the Court grants summary judgment in favor of Defendant Praxair in regard to Count II.

## II.     Retaliation (Count III)

The NJLAD prohibits "any person [from] tak[ing] reprisals against any person because that person has opposed any practices or acts forbidden under [the NJLAD]." N.J.S.A. § 10:5-12(d). "[A] plaintiff makes out a *prima facie* case of retaliation by showing '(1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action.'" *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 939 (3d Cir. 2009) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).

Plaintiff claims that Mr. Khan, on behalf of Defendant Praxair, terminated him in retaliation for his complaint against Mr. Khan.[3] (Norton Dep. 242:4–19.) The parties dispute whether Plaintiff actually submitted a complaint and thus "engaged in protected activity," and

---

[3] Plaintiff also mentioned that Mr. Khan retaliated against him by evaluating Plaintiff's performance improvement monitoring. However, Defendant Praxair placed Plaintiff on performance improvement monitoring *before* he allegedly submitted his complaint to the hotline—and actually, before Defendant Praxair even hired Mr. Khan. (*See* Defs.' Br. at 24–25 n.3.) Logically, therefore, Plaintiff is precluded from offering this argument in the context of his retaliation claim.

15

Plaintiff undisputedly suffered an adverse employment action by his termination. (*See, e.g.*, Defs.' Br. at 25.) Therefore, the first and second prongs do not favor a grant of summary judgment.

Notwithstanding, Plaintiff fails to make out a *prima facie* claim of retaliation because, in regard to the third prong, no causal connection exists between Plaintiff's harassment complaint and his termination. Plaintiff testified that Defendant Thatcher made the decision to terminate his employment. (Norton Dep. 238:4–9.) Plaintiff believes that Mr. Khan "was involved" in his investigation that ultimately led to his termination, but Plaintiff did not offer any reason as to why he believes that is so and admitted that Mr. Khan had not interviewed Plaintiff in connection with the investigation. (*Id.* 238:10–239:20.) Although Mr. Khan was the one who signed Plaintiff's termination letter, Defendants contend that this letter was simply a "form letter" that the terminated employee's supervisor traditionally signs. (Thatcher Dep. 161:21–17, 177:20–181:1.) Furthermore, another employee who submitted a complaint against Mr. Khan remains employed with Defendant Praxair (Baldwin Decl. ¶ 25),[4] further circumstantially negating Plaintiff's retaliation contention.

Additionally, even if Plaintiff were to make out a *prima facie* claim of retaliation, Defendants exercised legitimate, nondiscriminatory discretion to terminate his employment because of his performance and noncompliance with the Hours Requirement. The same rationale about which the Court expounded in regard to Plaintiff's discriminations claim applies in equal force here. Accordingly, the Court grants summary judgment in favor of Defendant Praxair in regard to Count III.

---

[4] Phillipe Diaz authored the only other complaint submitted against Mr. Khan, but Defendants contend that they have no record of any employee named Phillipe Diaz. (Baldwin Decl. ¶ 25.)

## III. Aiding and Abetting (Counts IV and V)

The NJLAD prohibits "any person . . . to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so." N.J.S.A. § 10:5-12(e). The Supreme Court of New Jersey has adopted the standard offered in the Restatement (Second) of Torts § 876(b) for determining the scope of "aid" and "abet" under the NJLAD. *See Tarr v. Ciasulli*, 853 A.2d 921, 928–29 (N.J. 2004). This type of liability is imposed "on an individual if he or she 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" *J.A. v. Vill. of Ridgewood Bd. of Educ.*, 2009 U.S. Dist. LEXIS 41100, at *27–28 (D.N.J. May 13, 2009) (citing *Tarr*, 853 A.2d at 929; Restatement (Second) of Torts § 876(b)). In other words,

> in order to hold an employee liable as an aider or abettor, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

*Tarr*, 853 A.2d at 929 (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999). Courts examine five factors to determine whether a defendant provides "substantial assistance": "(1) the nature of the act encouraged, (2) the amount of assistance provided, (3) whether the defendant was present at the time of the alleged discrimination, (4) the defendant's relations to the others, and (5) the state of mind of the defendant." *Vill. of Ridgewood*, 2009 U.S. Dist. LEXIS 41100, at *28 (citing *Tarr*, 853 A.2d at 929).

Defendant Thatcher first argues that "because Plaintiff cannot establish that [Defendant] Praxair engaged in discriminatory or retaliatory conduct violative of the [NJ]LAD . . . [Defendant] Thatcher cannot be held personally liable." (Defs.' Br. at 26–27.) However, "in recent years, following state lower courts, courts in this [D]istrict have found that aiding and

17

abetting one's own conduct is a sufficient basis for liability under the NJLAD." *Yobe v. Renaissance Elec., Inc.*, 2016 U.S. Dist. LEXIS 18227, at *11–12 (D.N.J. Feb. 16, 2016); *see also Rowan v. Hartford Plaza Ltd*, 2013 N.J. Super. Unpub. LEXIS 766, at *20 (App. Div. Apr. 5, 2013) (explaining that a supervisor "cannot escape individual liability for his own allegedly egregious conduct based on a narrow construction of the 'aiding and abetting' provision"). Therefore, the Court must still examine Defendant Thatcher's conduct.

The evidence available, however, would not support a jury verdict in favor of Plaintiff for either of his aiding and abetting claims against Defendant Thatcher. First, Plaintiff testified that Defendant Thatcher did not make any age-based comments.

> Q. Did Christine ever say or do anything to you that made you feel that she was somehow biased against you due to your age?
> A. Not to my age. Just my performance.
> Q. And did she ever make any aged based comments to you?
> A. No.

(Norton Dep. 249:1–8; *see also Davis v. City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008) (noting that "negative but non-discriminatory comments" do not rise to the level that provides an inference of discrimination); Norton Dep. 247:18–21 ("I don't know if it was age. It was just my performance that I thought she was not . . . listening to me. She was not listening to my story.").) Simply put, no nexus exists between Defendant Thatcher's decision to terminate Plaintiff and any age-based considerations.

Second, Defendant Thatcher neither knew about Plaintiff's protected activity—the complaint against Mr. Khan that he allegedly submitted—nor participated in the subsequent investigation of Mr. Khan. (*See* Thatcher Dep. 91:14–96, 133:25–134:12, 188:24–189:18.) The evidence presented cannot reasonably demonstrate that Defendant Thatcher was "generally aware of [any] role as part of an overall illegal or tortious activity" or that she "knowingly and

18

substantially assist[ed]" in any illegal or tortious activity. *Tarr*, 853 A.2d at 929; *Vill. of Ridgewood*, 2009 U.S. Dist. LEXIS 41100, at *28 (outlining factors to determine "substantial assistance"). Accordingly, the Court grants summary judgment in favor of Defendant Thatcher in regard to Counts IV and V.

## **CONCLUSION**

For the reasons stated herein, Defendants' Motion to Dismiss is granted. An appropriate order will follow.

Date: 04/10/2019  */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.